**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **KERWIN BURL STEPHENS,** | § | **Case No.: 21-40817-elm11** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| | § | |

**FOURTH AMENDED PLAN OF REORGANIZATION FOR DEBTOR**
<u>**KERWIN BURL STEPHENS**</u>

J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
**VARTABEDIAN HESTER & HAYNES LLP**
301 Commerce Street, Suite 2200
Fort Worth, TX 76102
Telephone: (817) 214-4990
Fax: (817) 214-4988
bobby.forshey@vhh.law
lynda.lankford@vhh.law

**ATTORNEYS FOR THE DEBTOR**
**AND DEBTOR-IN-POSSESSION**

DATED:       February 2, 2026

## ARTICLE I
## BUSINESS OPERATIONS OF THE DEBTOR

Pursuant to Section 1190(1)(A) of the Bankruptcy Code, the Debtor, Kerwin Burl Stephens, makes the following disclosures:

The Debtor is a practicing lawyer and businessman who resides in Graham, Texas. This bankruptcy arises out of an oil and gas project in Fisher County, Texas.

The Debtor and certain affiliated companies were involved in putting together an oil and gas investment program in Fisher County, Texas. The investment was hugely successful, and the investors reaped huge returns on their investments. Unfortunately, the Debtor and his affiliated entities were ultimately dragged into a lawsuit in state court in Fisher County arising out of the investment program. There were two (2) distinct sets of claimants in the lawsuit. Both groups of claimants obtained the entry of substantial judgments against the Debtor. Both of these judgments were appealed to the Texas Court of Appeals by the Debtor.

The judgment in favor of one group of claimants, generally referred to as the "Intervenors," was affirmed. Through the process of the Bankruptcy Court, the Debtor obtained an order allowing the Intervenors to draw against the supersedeas bonds posted in the lawsuit in order to pay all of the Intervenors' claims against the Debtor in full. The second group of claimants, generally referred to as the "Plaintiffs," also obtained the entry of a judgment in favor of Three Finger Black Shale Partnership. This judgment was reversed and rendered by the Court of Appeals. A take nothing judgment was rendered against one of the Plaintiffs. However, the other two (2) Plaintiffs (Trek and Tiburon) still assert claims against the Debtor arising out of the oil and gas project. The state court proceeding involving the Plaintiffs was removed to the bankruptcy case and is pending under Adversary Proceeding No. 21-04040. In the Adversary Proceeding, the Bankruptcy Court entered a take nothing judgment against the Plaintiffs. In the bankruptcy case, the Court disallowed the Plaintiffs' claims in their entirety. Plaintiffs have appealed the Adversary Proceeding judgment and the Orders disallowing Plaintiffs' proofs of claim.

The District Court found that the Adversary Proceeding was not timely removed and reversed the Bankruptcy Court's Orders and remanded the state court lawsuit back to Fisher County.

The Debtor believes that no other or further disclosure is necessary pursuant to Section 1190(1)(A). The holders of Class 2 Claims (Trek and Tiburon) are very familiar with the Debtor and his business affairs based upon years of litigation both in state court and before the Bankruptcy Court. Class 5 consists of the Kelly Hart law firm which acted as the Debtor's counsel and is likewise familiar with his assets and business.

A Liquidation Analysis and Plan Projections are attached hereto as **Exhibit "A"** and **Exhibit "B,"** respectively, and shall constitute Plan Documents as contemplated in Article II.B hereof.

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

### A.   Defined Terms.

In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

2.1.    "<u>Administrative Bar Date</u>" shall refer to the deadline to file Claims for Allowance as an Administrative Expense set forth in section 4.1(c) of the Plan.

2.2.    "<u>Administrative Expense</u>" shall include any cost or expense of administration of the Debtor's chapter 11 case allowed under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estate of the Debtor under section 1930, chapter 123 of title 28 of the United States Code.

2.3.    "<u>Adversary Proceeding</u>" shall mean Adversary No. 21-04040-elm pending before the Court, and which is the Severed Lawsuit which was removed to the Bankruptcy Court.

2.3.1   "<u>Adversary Proceeding Appeal</u>" shall mean the following appeal from the Bankruptcy Court to the District Court:

*Tiburon Land and Cattle, L.P., et al. v. Stephens, et al.,* Case No. 4:24-cv-01106-P in the United States District Court for the Northern District of Texas, consolidated with Case no. 4:25-cv-00018-P.

2.4.    "<u>Allow</u>" or "<u>Allowance</u>," when used with respect to a Claim, shall mean the process of determining whether a Claim is to be Allowed pursuant to this Plan.

2.5.    "<u>Allowed</u>," when used with respect to a Claim shall mean a Claim or Interest expressly allowed under the Bankruptcy Code and Bankruptcy Rules, the Plan, or by a Final Order, as applicable; <u>provided, however</u>, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Non-Appealable Judgment or a Final Non-Appealable Order of such other forum and allowed by Final Order of the Bankruptcy Court.

2.6.    "<u>Allowed Distribution Amount</u>" shall mean the amount of each of the Allowed Claims included in Classes 2, 3, and 5 to be used in the calculation of the Plaintiffs' Pro Rata Share of Distributions from the Distribution Fund.

2.7.    "<u>Assets</u>" shall include all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor or the Estate as of the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, all property of the Estate as defined in section 541 and, as applicable, section 1186 of the Bankruptcy Code.  For the avoidance of doubt, the Assets shall include all Exempt Property in which the Debtor holds or claims an interest as of the Effective Date.  Without limiting the generality of the foregoing, the Assets shall include all of the following: Estate Claims, Avoidance Actions, Estate Defenses, Estate Cash, Estate Accounts Receivable, Estate Insurance and Estate Contracts.

2.8.    "<u>Avoidance Action</u>" shall mean a cause of action and rights assertable by a Debtor against any Person, including but not limited to any Creditor, pursuant to Chapter 5 of the Bankruptcy Code, including without limitation, actions brought, or which may be brought, under sections 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, and including all causes of action, rights and remedies assertable by the Estate pursuant to section 544 of the Bankruptcy Code.

2.9.    "<u>Ballot</u>" shall mean the form of ballot provided to holders of Claims or Interests entitled to vote pursuant to Bankruptcy Rule 3017(d), by which each such holder may accept or

reject the Plan.

2.10.    "<u>Bank</u>" shall mean BancCentral, National Association, Alva, Oklahoma.

2.11.    "<u>Bank Collateral</u>" shall refer to the real estate and other property against which the Bank originally held a Lien pursuant to the Bank Loan Documents.

2.12.    "<u>Bank Loan Documents</u>" shall mean the documents evidencing and securing the extension of credit by the Bank to the Debtor, and shall include without limitation the following:

a)    A promissory note ("<u>Note</u>") dated June 5, 2017, executed by the Debtor and Thunderbird Development in favor of the Bank in the original principal amount of $6,303,359.98;

b)    A Reimbursement Agreement dated June 5, 2017, among the Bank, the Debtor and Thunderbird Development, LLC ("<u>Thunderbird Development</u>").

c)    A Security Agreement dated June 5, 2017, among the Debtor and Clear Fork Land & Cattle Co., as debtors and the Bank, as secured party.

d)    A Deed of Trust, Security Agreement, Assignment of Leases, Rents & Profits and Fixture Filing, dated as of July 5, 2017, executed by the Debtor, Spouse, and Thunderbird Development in favor of Kyle D. Hughbanks, as Trustee for the benefit of the Bank, and recorded in volume 2125 at page 92 *et seq.* of the official property records of Stephens County, Texas;

e)    A Deed of Trust Security Agreement, Assignment of Leases, Rents & Profits and Fixture Filing, dated July 5, 2017, executed by the Debtor, Spouse and Thunderbird Development in favor of Kyle D. Hughbanks, as Trustee for the benefit of the Bank, and recorded as instrument no. 17001511 in the official property records of Young County, Texas;

f)    A Deed of Trust Security Agreement, Assignment of Leases, Rents & Profits and Fixture Filing, dated July 5, 2017, executed by the Debtor, Spouse and Thunderbird Development in favor of Kyle D. Hughbanks, as Trustee for the benefit of the Bank, and recorded as instrument no. 2017-13542 in the official property records of Johnson County, Texas;

g)    A Security Agreement dated October 4, 2018, among Rancher Investments, Inc., as debtor, and the Bank, as secured party; and

h)    2019 Loan Modification Agreement among the Debtor, Spouse, Thunderbird Development, Clear Fork Land & Cattle Co., the Ranchers Investments, Inc., dated April 15, 2019.

2.13.    "<u>Bankruptcy Case</u>" shall mean Case No. 21-40817-elm11 pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

2.14.    "<u>Bankruptcy Code</u>" shall mean the Bankruptcy Reform Act of 1978, as amended and codified at Title 11 of the United States Code.

2.15.    "<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

2.16.    "<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, including all applicable local rules of the Bankruptcy Court, and any reference to a specific rule is a "<u>Bankruptcy Rule</u>."

2.17.    "<u>Bar Date</u>" is the date established by the Bankruptcy Court, including through any

standing order, for filing proofs of Claim or proofs of Interest; provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor may file a proof of Claim or proof of Interest, the date set with respect to such Creditor shall be the Bar Date with respect to such Creditor, but only as to such Creditor.

2.18.    "Bond Proceeds" shall mean the Proceeds derived from the Supersedeas Bond.

2.19.    "Business Day" shall mean any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.20.    "Business Entities" shall refer to the business entities in which the Debtor owns an interest, and which shall include Stephens Myers LLP, Clear Fork Land & Cattle Co., and Brazos Title, LLC.

2.21.    "Cash" shall mean cash and cash equivalents, including funds held in a checking or money market account.

2.22.    "Claim" shall mean (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured, or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

2.23.    "Claims Objections" shall include the objections by the Debtor to Plaintiffs' POCs, including the objections filed at Docket Nos. 158 and 159.

2.24.    "Claimant" shall mean the holder of a Claim.

2.25.    "Class" shall mean a category or group of holders of Claims or Interests as designated in Article III of the Plan.

2.26.    "Collateral" shall mean any Asset subject to a valid and enforceable Lien to secure payment of a Claim, including any right of offset asserted against any Asset.

2.27.    "Confirmation Date" shall mean the date of entry of the Confirmation Order.

2.28.    "Confirmation Hearing" shall mean the hearing, as it may be continued from time-to-time, conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be amended, modified, or supplemented.

2.29.    "Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

2.30.    "Convenience Claim" shall mean any General Unsecured Claim which is Allowed in the amount of $500 or less, or for which the holder of a General Unsecured Claim with an Allowed Claim in excess of $500 agrees to the Allowance of such Claim in the amount of $500.

2.31.    "Contested," when used with respect to a Claim, shall mean a Claim: (a) that is listed in the Schedules of a Debtor as disputed, contingent, and/or unliquidated, or in the amount of "$0.00" or "Unknown"; (b) that is listed in the Schedules of a Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount;

(c) that is not listed in the Schedules of a Debtor, regardless of whether or not a proof of Claim has been filed with the Bankruptcy Court; (d) as to which an Objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; (e) for which the proof of Claim is filed after the applicable Bar Date; and (f) any Claim asserted by Plaintiffs, including based on Plaintiffs' POCs or through the Severed Lawsuit; provided, however, that all Claims shall be deemed as Contested until the applicable Objection Deadline has passed.  In addition, any Claim which is subject to an Objection or other pleading seeking either subordination (whether equitable or otherwise) or recharacterization of such Claim, including pursuant to section 510(c) of the Bankruptcy Code, shall likewise be deemed to constitute a Contested Claim until such Objection has been resolved by a Final Order.

2.32.    "Creditor" shall have the same meaning as in section 101(10) of the Bankruptcy Code.

2.33.    "Cure Claim" shall refer to a Claim under section 365(b) of the Bankruptcy Code (a) for the payment or other performance required to cure any existing default under an Executory Contract or (b) for any actual pecuniary loss resulting from any such default under an Executory Contract.

2.34.    "Debtor" shall mean Kerwin B. Stephens, individually.

2.35.    "Disallowed" when used with respect to all or any part of a Claim or Interest, shall mean that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to any Contested Claim, any portion thereof which is not Allowed by a Final Order of the Bankruptcy Court.

2.36.    "Disposable Income" shall have the meaning provided for such term in section 1191(d) of the Bankruptcy Code.

2.37.    "Distribution" shall refer to and include any distribution of any property pursuant to this Plan.

2.38.    "Distribution Event" shall mean the first Business Day on which, by virtue of one, any, or all of the following, Plaintiffs' Claims have been fully and finally determined, such that the Allowed amount, if any, of Plaintiffs' Claims has been fully and finally determined for purposes of Distribution under the Plan:

a)    A Final Non-Appealable Judgment has been entered in the Severed Lawsuit regarding the Plaintiffs' Claims and Plaintiffs' POCs have been Allowed by a Final Non-Appealable Order of the Bankruptcy Court based upon such Judgment in the Second Lawsuit;

b)    A Final Non-Appealable Order has been entered by the Bankruptcy Court fixing the amount of Plaintiffs' POCS, including through the Claims Objections or Estimation Procedure the amount of Plaintiffs' Claims for purposes of any Distribution through the Distribution Fund; or

c)    An agreement in writing filed with the Bankruptcy Court between the Reorganized Debtor and the Plaintiffs regarding the Allowed Amount of Plaintiffs' claims.

2.39.    "Distribution Fund" shall mean the fund described in Article VII hereof from which Distributions will be made to holders of Allowed Claims.

2.40.    "Divorce Action" shall mean the divorce proceeding pending between the Debtor and the Spouse in the 29th Judicial District Court of Palo Pinto County, Texas (the "Divorce Court").

2.41.   "Effective Date" shall mean the first Business Day which is fourteen (14) days after the Confirmation Date if the Confirmation Order is not stayed or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay which is at least fourteen (14) Business Days after the Confirmation Date, and upon which all conditions to the effectiveness of the Plan set forth in Article XII below are satisfied.

2.42.   "Equitable Subordination" shall be broadly construed and shall encompass any right or remedy to equitably subordinate or recharacterize as equity any Claim, including without limitation any such right or remedy pursuant to section 510(c) of the Bankruptcy Code.

2.43.   "Estate" shall mean the bankruptcy estate of the Debtor in this Bankruptcy Case.

2.44.   "Estate Cash" shall mean Cash held by the Estate.

2.45.   "Estate Claims" shall include any and all Claims or causes of action or rights of action held by an Estate against any Person, whether based on a contract, applicable tort or common law, or any law, statute or regulation of any governmental body or entity, including without limitation all Avoidance Actions, causes of action, rights of action or any right to recover money or property from any Person, as well as all legal and equitable rights and remedies incident to any of the forgoing.  Estate Claims shall also include all applicable privileges in relation thereto, including the attorney-client privilege and the work product privilege.  The Estate Claims shall include, without limitation, all rights to recover costs of litigation or any appeal from the Plaintiffs.

2.46.   "Estate Defenses" shall refer to all defenses, affirmative defenses, counterclaims, or rights of offset or recoupment by an Estate against any Person, including without limitation all affirmative defenses referenced in Fed. R. Civ. Pr. 8(c).  Estate Defenses shall also include all rights and remedies for Equitable Subordination.  Estate Defenses shall also include all applicable privileges with respect thereto, including the attorney-client privilege and work product privilege.  Estate Defenses shall include all claims, defenses, and/or affirmative defenses asserted by Debtor to Plaintiffs' Claims in the Adversary Proceeding, the Second Lawsuit, and the Claims Objections to Plaintiffs' POCs.

2.47.   "Estate Insurance" shall include any insurance policy or interest in an insurance policy in which an Estate has an interest or rights.

2.48.   "Estate Professional" shall mean those Persons employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328 and 1103 of the Bankruptcy Code or who are entitled to compensation or reimbursement pursuant to sections 503(b)(3)(D) or 506(b) of the Bankruptcy Code.

2.49.   "Estimation Procedure" shall mean a contested matter before the Bankruptcy Court to estimate pursuant to section 502(c) the Allowed Distribution Amount of any of Plaintiffs' Claims for which an estimation is conducted by the Bankruptcy Court.  The Bankruptcy Court's order authorizing the estimation of Plaintiffs' Claims will set forth the procedures to be employed in the estimation of Plaintiffs' Claims.

2.50.   "Executory Contract" shall refer to any executory contract or unexpired lease which is subject to section 365 of the Bankruptcy Code.

2.51.   "Exemplary Damages" shall mean any multiple, exemplary, or punitive damages which are not in compensation for actual loss or damage.

2.52.   "Exempt Property" shall mean the Assets subject to exemption, or which the Debtor asserts is exempt, pursuant to section 522 of the Bankruptcy Code or other applicable

federal or state law, and shall include without limitation all property reflected in Debtor's Schedule "C" filed at Docket no. 97, pp. 38 through 46 of 78.

2.53.   "Final Decree" shall mean the decree contemplated under Bankruptcy Rule 3022 closing this Bankruptcy Case or any other applicable law.

2.54.   "Final Non-Appealable Judgment" or a "Final Non-Appealable Order" shall mean a judgment or order for which all options for appellate review or reconsideration, by any tribunal, whether by direct appeal, writ of certiorari, reconsideration, rehearing, or otherwise, have been fully and finally exhausted.

2.55.   "Final Order" shall mean an order or judgment of the Bankruptcy Court or any other court or adjudicative body which is subject to appeal as a matter of right, including a final order allowing or disallowing a Claim.

2.56.   "Furr Place" shall mean a tract of land consisting of approximately 474.423 acres located on West Furr Road, Newcastle, Young County, Texas.

2.57.   "General Unsecured Claim" shall mean a Claim which is not a Secured Claim, is not an Administrative Expense and is not entitled to priority of distribution pursuant to section 507 of the Bankruptcy Code, and includes any Rejection Claims pursuant to section 502(g) of the Bankruptcy Code.

2.58.   "Governmental Bar Date" shall mean the date by which any Governmental Unit must file proofs of claim pursuant to section 502(b)(9) and Bankruptcy Rule 3002(c)(1).

2.59.   "Governmental Unit" shall have the same meaning as in section 101(27) of the Bankruptcy Code.

2.60.   "Initial Distribution Date", when used with respect to any Contested Claim or Rejection Claim, shall mean the later of (i) the first Business Day at least thirty (30) days after the date on which any such Contested Claim or Rejection Claim becomes an Allowed Claim, or (ii) if the payment terms of Article V of this Plan applicable to each such Claim specify a different date, then the date as calculated pursuant to the terms of Article V of this Plan applicable to each such Claim.  The Initial Distribution Date shall be separately determined with respect to each Contested Claim or Rejection Claim based upon the date each such Claim became an Allowed Claim.

2.61.   "Intervenors" shall mean L. W. Hunt Resources, LLC, and Richard Raughton, individually.

2.62.   "JLS 2022" shall mean JLS 2022, LLC, as the successor in interest to the Bank.

2.63.   "JLS Assets" shall mean the portion of the Bank Collateral transferred to JLS 2022 in satisfaction of the Secured Claim formerly held by the Bank.

2.64.   "Kelly Hart" shall mean the law firm of Kelly Hart & Hallman, LLP, Fort Worth, Texas.

2.65.   "Lawsuit" shall mean the following cause:

*Tiburon Land and Cattle, LP* and *Trek Resources, Inc., Plaintiffs* vs. *Kerwin Stephens, et. al.*, Defendants, Cause No. DC-2013-0016 in the 32nd District Court of Fisher County, Texas

2.66.   "Lien" shall mean any mortgage, lien, charge, security interest, encumbrance, or

other security device of any kind affecting any Asset, including any right of offset asserted against any Asset.

2.67.    The definition "Non-Exempt Retained Assets" has been removed from the Plan and replaced by "Retained Non-Exempt Assets" as defined herein.

2.68.    "Objection" shall include (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.  Any pleading seeking to subordinate or recharacterize a Claim shall also constitute an Objection.

2.69.    "Objection Deadline" shall mean the later of (a) ninety (90) days following the Effective Date, unless otherwise extended by order of the Bankruptcy Court, or (b) as to any Rejection Claim filed after the Effective Date, ninety (90) days after the date on which the proof of Claim reflecting the Rejection Claim is filed.

2.70.    "Person" shall include any individual, any type of incorporated or registered business or nonprofit entity, including any corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental entity or unit, or any political subdivision thereof, or any other entity of every type or nature.

2.71.    "Petition Date" shall mean April 7, 2021.

2.72.    "Plaintiffs" shall mean Tiburon Land and Cattle, LP ("Tiburon") and Trek Resources, Inc. ("Trek"), the Plaintiffs in the Adversary Proceeding.

2.73.    "Plaintiffs' POCs" shall mean any proof of claim filed by any of the Plaintiffs in this Bankruptcy Case.

2.74.    "Plan" shall mean this Plan of Reorganization for the Debtor, either in its present form or as it may be altered, amended, modified, or supplemented from time-to-time.

2.75.    "Plan Documents" shall refer to the documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Article II.B. hereof.

2.76.    "Priority Claim" shall mean a Claim that is entitled to priority of payment under sections 507(a)(4) through (7) of the Bankruptcy Code.

2.77.    "Priority Tax Claim" shall mean a Claim entitled to priority of payment pursuant to section 507(a)(8) of the Bankruptcy Code, other than any Property Tax Claims.

2.78.    "Property Tax Claim" shall mean a Claim for Property Taxes.

2.79.    "Property Taxes" shall mean such taxes assessed by any Taxing Authority against any property of the Debtor based on the value thereof, as allowed by applicable state and local law.

2.80.    "Pro Rata Share" shall mean, as to the holder of a specific Claim, the ratio that the amount of such holder's Claim bears to the aggregate amount of all Claims included in the applicable class, sub-class, or group.

2.81.    "Reorganized Debtor" shall mean the Debtor from and after the Effective Date of

this Plan.

2.82.    "Retained Assets" shall include all Assets other than those transferred to JLS 2022.

2.83.    "Retained Non-Exempt Assets" shall mean the Retained Assets other than the Exempt Property and shall replace the term "Non-Exempt Retained Assets" where used herein.

2.84.    "Retained Causes of Action" shall mean those causes of action, claims, counterclaims, defenses, and rights of offset or recoupment retained by the Reorganized Debtor as described in section 9.1 of the Plan.

2.85.    "Retained Land" shall mean the real property reflected in **Exhibit "C"** to this Plan.

2.86.    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code as a consequence of the rejection of any Executory Contract.

2.87.    "Sales Proceeds" shall mean the net proceeds arising from the sale of any Asset, other than any Exempt Property, after payment of any sales commissions and other costs of sale.

2.88.    "Schedules" shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor as required by section 521 of the Bankruptcy Code.

2.89.    Schedule of Rejected Executory Contracts" shall mean the Schedule of Executory Contracts to be rejected under the Plan as provided in section 11.1 hereof, which may be filed at any time prior to the Confirmation Hearing, and as filed, shall constitute a Plan Document.

2.90.    "Secured Claim" shall mean (a) a Claim secured by a Lien against an Asset, to the extent such Lien is valid, perfected and enforceable under applicable non-bankruptcy law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly Allowed, but only to the extent that such Secured Claim does not exceed the value of the Assets which the Bankruptcy Court finds are valid security for such Claim (except, if the holder of such Claim makes the election provided for in section 1111(b)(2) of the Bankruptcy Code, the entire amount of the Claim shall be a Secured Claim), and (b) any valid and enforceable right of offset asserted against a Debtor or any Asset.

2.91.    "Secured Creditor" shall mean the holder of a Secured Claim.

2.92.    "Severed Lawsuit" shall mean the following cause:

*Tiburon Land and Cattle, LP and Trek Resources, Inc., Plaintiffs, and L.W. Hunt Resources, LLC; and Richard Raughton, Intervenors, vs. Sarah Kate Jones, as the Independent Executrix of the Estate of Thomas J. Taylor, deceased, et. al., Defendants*, Cause No. DC-2013-0016A, in the 32nd District Court of Fisher County, Texas

2.93.    "Spouse" shall mean Gail Goebel Stephens.

2.92.1    "State Court" shall mean the 32nd District Court of Fisher County, Texas.

2.94.    "Spouse Claims" shall include the Claims and rights asserted by the Spouse in Proofs of Claim 13-2 and 14-1.  These proofs of claim were later withdrawn by the Spouse pursuant to a pleading filed at docket no. 466 in the Bankruptcy Case.

2.95.    "Subchapter V Trustee" shall mean Areya Holder Aurzada.

2.96.   "Subchapter V Trustee Fees" shall mean those fees to be paid to the Subchapter V Trustee pursuant to section 330 of the Bankruptcy Code.

2.97.   "Substantial Consummation" shall mean the day on which the Estate's Assets are transferred to the Reorganized Debtor.

2.98.   "Supersedes Bond" shall mean the Bond issued by U.S. Specialty Insurance Company in connection with the Lawsuit.

2.99.   "Taxing Authority" shall include the State of Texas or any subdivision thereof, including without limitation any political subdivision of the State of Texas assessing ad valorem taxes against any of the Assets.

2.99.1   "Third Stay Motion" shall mean *State Court Plaintiffs' Third Motion to Lift Automatic Stay* [Docket no. 476] filed in the Bankruptcy Case.

2.100.   "Unclaimed Property" shall mean any Cash, Distribution, payment, or any other property unclaimed for a period of one hundred twenty (120) days after the date of the applicable Distribution, or such longer period which the Reorganized Debtor may fix in the exercise of its good faith business judgment.

2.101.   "U.S. Trustee" shall mean the office of the U.S. Trustee for Region 6.

2.102.   "Vehicle Loans" shall refer to two (2) Motor Vehicle Installment Sales Contracts relating to the following vehicles:

   a.  a 2020 GMC Sierra; and

   b.  a 2015 GMC Sierra 1500.

## B.      Rules of Interpretation and Construction of Terms

2.103.   Unless otherwise specified, all section, Article and exhibit references in this Plan are to the respective section in, Article of, or exhibit to, the Plan as the same may be amended, supplemented, or otherwise modified from time to time.  The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions or the interpretation hereof.

2.104.   The words "herein," hereof," and "hereunder" or other words of similar import shall refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan, unless the context requires otherwise.

2.105.   Whenever from the context it appears appropriate, each term stated in either the singular or plural includes both singular and plural, and pronouns stated in masculine, feminine or neuter form shall include all of the masculine, feminine or neuter form.

2.106.   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan, the Confirmation Order, and all Plan Documents.

2.107.   References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code.  Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to those terms, if any, in the Bankruptcy Code.

2.108.   All Exhibits to the Plan and all Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as set forth in full herein.  Certain Plan Documents may be filed with the Clerk of the Bankruptcy Court prior to the commencement of the Confirmation

Hearing.  Holders of Claims and Interests may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address: Vartabedian Hester & Haynes LLP, 301 Commerce Street, Suite 2200, Fort Worth, Texas 76102, Attention: Julie Gonzalez; email: julie.gonzalez@vhh.law.

2.109.  Any reference herein to any agreement, contract, instrument, or other document in this Plan shall refer to such agreement, contract, instrument, or document as amended, supplemented, or modified.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1.    The following is a designation of the Classes of Claims and Interests pursuant to this Plan.  A Claim is included in a particular Class only to the extent that the Claim is an Allowed Claim within that Class.

3.2.    <u>Claims and Interests</u>.  Claims and Interests against or in the Debtor are classified under this Plan as follows:

 (a) <u>Class 1</u> – Claims by the Intervenors

 (b) <u>Class 2</u> – Claims by the Plaintiffs

 (c) <u>Class 3</u> – General Unsecured Claims

 (d) <u>Class 4 </u>– Convenience Claims

 (e) <u>Class 5 </u>– Kelly Hart Claim

 (f) <u>Class 6 </u>– Empty Class – removed from the Plan

 (g) <u>Class 7 </u>– Vehicle Loans

 (h) <u>Class 8</u> – Secured Claim of JLS 2022 as the successor in interest to the Bank

 (i) <u>Class 9 </u>– Claims and property interests held by Debtor's Spouse

3.3.    <u>Impaired Classes of Claims and Interests</u>.  Classes 2, 3, 5, 8, and 9 are impaired and entitled to vote on the Plan.  Classes 1, 4 and 7 are unimpaired and ineligible to vote on the Plan.

3.4.    <u>Impairment or Classification Controversies</u>. If a controversy arises as to the classification of any Claim or Interest, or as to whether any Class of Claims or Interests is impaired under the Plan, the Bankruptcy Court shall determine such controversy as a part of the confirmation process.

## ARTICLE IV
## TREATMENT OF UNCLASSIFIED CLAIMS

4.1.    <u>Administrative Expenses</u>.

(a)    The Reorganized Debtor shall pay, in accordance with the ordinary business terms applicable to such expense or cost, the reasonable and ordinary expenses incurred in operating the Debtor's business or administering the Estate before the Effective Date ("<u>Ordinary Course Claims</u>").  The remaining provisions of this section 4.1 shall not apply to the Ordinary Course Claims, except that if there is a dispute relating to any such Ordinary Course Claim, the

Reorganized Debtor may move the Bankruptcy Court to apply the provisions of Article X below relating to Contested Claims and require the holder of the Contested Ordinary Course Claim to assert such Claim through this Bankruptcy Case.

(b)     Each holder of an Allowed Administrative Expense (other than Ordinary Course Claims and Administrative Expense Claims by Estate Professionals), shall receive (i) the amount of such holder's Allowed Administrative Expense in one Cash payment on the later of the Effective Date or the tenth (10th) Business Day after such Administrative Expense becomes an Allowed Administrative Expense, or (ii) such other treatment as may be agreed to in writing by such Administrative Expense Creditor and the Reorganized Debtor, or as otherwise ordered by the Bankruptcy Court.

(c)     Unless the Bankruptcy Court orders to the contrary or the Reorganized Debtor agrees to the contrary in writing, the holder of a Claim for an Administrative Expense, other than such a Claim by an Estate Professional, an Ordinary Course Claim, or an Administrative Expense which is already Allowed, shall file with the Bankruptcy Court and serve upon the Reorganized Debtor and its counsel a written notice of such Claim for an Administrative Expense within thirty (30) days after the Effective Date. This deadline is the Administrative Bar Date. Such notice shall include at a minimum: (i) the name, address, telephone number and fax number (if applicable) or email address of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to timely and properly file and serve such notice by or on the Administrative Bar Date shall result in such Claim for an Administrative Expense being forever barred from receiving any Distribution.

(d)     A Claim for an Administrative Expense, for which a proper notice was filed and served under subsection 4.1(c) above, shall become an Allowed Administrative Expense if no Objection is filed within thirty (30) days of the filing and service of such notice. If a timely Objection is filed, the Claim shall become an Allowed Administrative Expense only to the extent allowed by a Final Order.

(e)     The procedures contained in subsections 4.1(a), (c) and (d) above shall not apply to Administrative Expense Claims asserted by Estate Professionals, who shall each file and submit an appropriate final fee application to the Bankruptcy Court no later than sixty (60) days after the Effective Date. A Claim for an Administrative Expense by an Estate Professional in respect of which a final fee application has been properly filed and served shall become an Allowed Administrative Expense only to the extent allowed by Final Order and, if so Allowed, shall be paid as set forth herein.

(f)     Professional fees and expenses to any Estate Professional incurred on or after the Effective Date may be paid by the Reorganized Debtor without necessity of any application to, or order by, the Bankruptcy Court.

(g)     If the Reorganized Debtor asserts any Estate Claims as counterclaims or defenses to a Claim for an Administrative Expense, the Administrative Expense Claim shall be determined through an adversary proceeding before the Bankruptcy Court. The Bankruptcy Court shall have exclusive jurisdiction to adjudicate and Allow all Claims for any Administrative Expense.

4.2.     <u>Priority Tax Claims</u>. Each holder of an Allowed Priority Tax Claim (including any Allowed Property Tax Claims) shall receive, at the Debtor's option, (a) the amount of such holder's Allowed Claim in one Cash payment on the Initial Distribution Date; (b) the amount of such holder's Allowed Claim, in substantially equal monthly Cash payments, beginning on ninetieth (90th) day after the Effective Date and continuing monthly thereafter until the 60th

month of the plan payments whereby the Debtor will remit the entire remaining balance of such Allowed Claim in one lump sum Cash payment; or (c) such other treatment as may be agreed to in writing by the holder of the Priority Tax Claim and the Debtor.  In relation to any Allowed Property Tax Claims secured by a Lien against any tract of the Land and upon the sale of any such tract, such Property Tax Claims shall be paid at closing from the Sales Proceeds arising from the sale of any such tract of Land.

4.3.    Subchapter V Trustee's Fees. The Reorganized Debtor shall pay the Subchapter V Trustee Fees incurred pursuant to sections 1183 and 330 of the Bankruptcy Code which are due pursuant to a Final Order granting the Subchapter V Trustee Fees entered by the Bankruptcy Court. Such fees will be paid in one lump sum Cash payment within fifteen (15) days of the date a Final Order is entered or as may be otherwise agreed between the Debtor and the Subchapter V Trustee.

4.4.    Governmental Bar Date.  The Governmental Bar Date shall apply to all Claims by a Governmental Unit which are not Administrative Claims.

4.5.    2025 Property Tax Claims.  Property Tax Claims for tax year 2025 shall be paid by the Reorganized Debtor in the ordinary course of business pursuant to section 4.1(a) of the Plan, and the holders of such Property Tax Claims shall retain their Liens securing such taxes unaffected.  Section 4.1(b) shall not apply to such 2025 Property Tax Claims.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS

Claims and Interests are classified by priority or type.  The treatment described below shall apply to all Allowed Claims or Interests included in any Class as set forth below.

5.1.    Class 1 – Intervenors.  The Intervenors' Allowed Claims have been paid in full from the Bond Proceeds.  Based on this payment to Intervenors of the Bond Proceeds, all Claims by Intervenors against the Debtor and the Assets are deemed as fully satisfied in all respects.  The Intervenors shall be entitled to no other Distribution pursuant to this Plan or any further claim or rights against any of the Assets.  All Liens securing the Claims of the Intervenors against any of the Assets shall be deemed as fully extinguished and satisfied based upon the payment of the Bond Proceeds to Intervenors.

(a)    Class 1 is unimpaired.

5.2.    Class 2 – Plaintiffs.  The Claims of the Plaintiffs shall be treated as follows:

(a)    The Plaintiffs' Claims constitute Contested Claims.

(b)    Unless estimated as provided in subsection (d) below, the Plaintiffs' Claims shall be determined and liquidated through the entry by the Bankruptcy Court through the Debtor's pending Claim Objections, as the same may be supplemented or modified.

(c)    To the extent, if any, that Plaintiffs' Claims are Allowed pursuant to a Final Non-Appealable Order by the Bankruptcy Court fixing the Allowed amount, if any, of the Plaintiffs' POCs, or pursuant to an agreement with the Reorganized Debtor, thereby fixing the Allowed Distribution Amount of Plaintiffs' Claims, Plaintiffs shall be entitled to receive a Pro Rata Share, calculated using the Allowed Distribution Amount of Plaintiffs' Claims, of any Distribution from the Distribution Fund to the holders of Allowed Claims included in Classes 2, 3, and 5 until Plaintiffs' Claims have been fully satisfied in accordance with this Plan or all Retained Non-Exempt Assets have been liquidated and applied to the payment of Allowed Claims included in Classes 2, 3, and 5.

In the Adversary Proceeding Appeal, the District Court reversed the Bankruptcy Court's holding that the Adversary Proceeding was timely removed from the State Court. The District Court then remanded the Adversary Proceeding back to the State Court. The Debtor and the other appellees in the Adversary Proceeding Appeal moved the District Court for a rehearing on this ruling pursuant to Fed. R. Bankr. P. 8022. On November 24, 2025, the District Court entered an Order denying the Appellees' motion for rehearing.

Plaintiffs filed the Third Stay Motion which was considered by the Bankruptcy Court on November 5, 2025. At the conclusion of the hearing, the Court placed the Third Stay Motion in abeyance pending a ruling by the District Court in the Adversary Proceeding Appeal. The Debtor continues to assert that the relief sought by Plaintiffs in the Third Stay Motion should be denied and that the Plaintiffs' Claims against Debtor should be determined by the Bankruptcy Court through the claims allowance process in relation to the Plaintiffs' POCs without any further involvement by the State Court. However, the manner in which Plaintiffs' POCs will ultimately be liquidated will be based upon the District Court's ruling in the Adversary Proceeding Appeal and this Court's resulting ruling on the Third Stay Motion. The Debtor may further amend the Plan at any time before the Effective Date based upon the ruling by the District Court which may dictate the method for liquidating Plaintiffs' Claims. Likewise, the Confirmation Order may contain provisions to address this issue. However, this Plan is intended to accommodate the liquidation of the Plaintiffs' POCs either before the Bankruptcy Court as a part of the claims allowance process or through the State Court.

If Plaintiffs' POCs are liquidated by the State Court, Plaintiffs' POCs must still be allowed by this Court through the claims allowance process. For purposes of the claims allowance process, the Plaintiffs' POCs will only be deemed as liquidated and fixed through a Final Non-Appealable Judgment or Final Non-Appealable Order of both the State Court and the Bankruptcy Court, as applicable, and Plaintiffs' POCs may not be Allowed for any Distribution through this Plan other than through a Final Non-Appealable Judgment or Final Non-Appealable Order of the State Court and the Bankruptcy Court, as applicable.

Previously, there was filed in the Bankruptcy Court a *Debtor's Second Motion to Estimate Claims of Tiburon Land & Cattle, LP and Trek Resources, Inc. Pursuant to Section 502(c) of the Bankruptcy Code* [Docket no. 160] ("Second Estimation Motion"). In the Second Estimation Motion, estimation was sought of the Plaintiffs' Claims in the State Court Lawsuit. This included the Plaintiffs' Claims for both legal relief and for equitable relief through equitable disgorgement. The Second Estimation Motion was heard by the Bankruptcy Court on November 16, 2021. On February 22, 2022, the Bankruptcy Court entered its *Order Denying Debtor's Second Motion to Estimate Claims as Moot* [Docket no. 298] ("Estimation Order"). The Estimation Order provides as follows on pages 2 and 3 thereof [Footnotes omitted; Emphasis in original as to the first paragraph; Emphasis added as to the second paragraph]:

> On July 27, 2021, Stephens filed an objection to the Tiburon Claim, an objection to the Trek Claim, and the Motion to Estimate. Pursuant to the Motion to Estimate, Stephens requests that the Court estimate the Bankruptcy Claims pursuant to 11 U.S.C. § 502(c) – both as to the amounts sought in the Bankruptcy Claims based upon the legal relief sought pursuant to the cause of action asserted by the Plaintiffs in the State Court Action (the '**Legal Relief**') and as to any amounts sought in the

Bankruptcy Claims based upon the equitable disgorgement relief sought pursuant to the Plaintiffs' motion for entry of judgment filed in the State Court Action (the '**Equitable Relief**'). On August 26, 2021, the Plaintiffs filed a joint response in opposition to the claims objections and the Motion to Estimate.

The Court conducted a hearing on the Motion to Estimate (along with several other matters involving the same parties) on November 15 and 16, 2021. During closing arguments at the hearing, counsel for Stephens represented to the Court that Stephens was modifying the estimation request to limit the request to any Equitable Relief sought by the Plaintiffs as part of the Bankruptcy Claims. Stephens abandoned the request to estimate with respect to the Legal Relief sought by the Plaintiffs as part of the Bankruptcy Claims.   **On the flip side, during closing arguments counsel for the Plaintiffs represented to the Court that the Plaintiffs have not requested any Equitable Relief under the Plaintiffs' POCs or as part of the Bankruptcy Claims.   In other words, the Plaintiffs have limited the relief sought pursuant to the Plaintiffs' POCs and the Bankruptcy Claims to Legal Relief alone.  (emphasis added)**

The Estimation Order shall continue to be effective as to any allowance of the Plaintiffs' Claims in the Bankruptcy Case, whether before the State Court or the Bankruptcy Court, and shall continue to operate as a limit or the relief available to Plaintiffs based on the Plaintiffs' Claims.

The Debtor retains the right to seek an estimation of the Plaintiffs' Claims pursuant to an Estimation Proceeding whether the Third Stay Motion is granted or denied.

(d)      The Reorganized Debtor may move the Bankruptcy Court to estimate the remaining Plaintiffs' Claims pursuant to section 502(c) through an Estimation Proceeding.  If all or some portion of Plaintiffs' Claims is so estimated, the Allowed Amount of Plaintiffs' Claims as so estimated and fixed by a Final Non-Appealable Order of the Bankruptcy Court shall be used to determine the existence of a Distribution Event and the Allowed Distribution Amount for any Distributions to Plaintiffs through the Distribution Fund.

(e)      The Debtor seeks the estimation of Plaintiffs' Claims, as a part of the Confirmation Hearing, for purposes of confirmation of this Plan.  Such estimation is solely for the purpose of confirmation and shall have no preclusive effect as to the allowance of Plaintiffs' Claims for purposes of distributions under the Plan. Specifically, the estimation of Plaintiffs' Claims by the Court in the amount of $1,000,000.00 each for Plan confirmation purposes is not an admission by either Plaintiffs or the Debtor of the amount of Plaintiffs' Claim for distribution purposes or otherwise.

(f)      Holders of Allowed Class 2 Claims shall receive interest on such Claims at the legal rate pursuant to section 726(b)(5).

(g)      To the extent that Plaintiffs' Allowed Claims include any Exemplary Damages, Distributions based upon such Allowed Claims for Exemplary Damages shall be subordinated to the Claims of the holders of Allowed Class 3 and Class 5 Claims which do not consist of Exemplary Damages.

(h)      Unless and until Allowed, all Claims by the Plaintiffs shall constitute Contested Claims.  The Objection Deadline of Section 10.3 of the Plan shall not apply to Plaintiffs' Claims.

(i)      Class 2 is impaired.

5.3.      Class 3 – General Unsecured Claims.  Class 3 does not include holders of Class 1 Claims (Intervenors), Class 2 Claims (Plaintiffs), Class 4 (Convenience Claims) or Class 5 (Kelly Hart).  The Holders of Allowed Class 3 General Unsecured Claims shall be treated as follows:

(a)      Each holder of a General Unsecured Claim shall have the option of marking their Ballot to reduce their claim to $500 and be treated as a Convenience Claim under Class 4.

(b)      The Holders of Allowed Class 3 Claims who do not make the election in paragraph (a) above to be treated as a Class 4 Convenience Claim shall receive a Pro Rata Share of all Distributions from the Distribution Fund until all such Allowed Class 3 Claims have been fully satisfied or all Retained Non-Exempt Assets have been fully liquidated.

(c)      Holders of Allowed Class 3 Claims shall receive interest on such Allowed Claims at the legal rate of interest pursuant to section 726(b)(5).

(d)      Class 3 is impaired.

5.4.      Class 4 – Convenience Claims

(a)      Allowed Convenience Claims shall be paid in full within 90 days after the Effective Date.  Holders of Allowed Class 4 Claims shall receive interest on such Allowed Claims at the legal rate of interest pursuant to section 726(b)(5).

(b)      Class 4 is unimpaired.

5.5.      Class 5 – Kelly Hart

(a)      Kelly Hart shall have an Allowed Claim in the amount of $568,270.  Kelly Hart shall receive a Pro Rata Share of all Distributions from the Distribution Fund until its claim has been fully satisfied or the Retained Non-Exempt Assets have been fully liquidated.  No interest will be paid on the Kelly Hart Claim.

(b)      Class 5 is impaired.

5.6.      Class 6 is an empty Class.  Accordingly, section 5.6 is hereby removed.

5.7.      Class 7 – Vehicle Loans

(a)      The Secured Claims based on Vehicle Loans shall be paid according to their respective terms by the Reorganized Debtor from his post-Effective Date Disposable Income or through income generated by one of the Business Entities.

(b)      Holders of Class 7 Claims are unimpaired.

5.8.    <u>Class 8 – JLS 2022</u>

(a)    JLS 2022 is owned and controlled by the Debtor's son, Jarrod Stephens.  JLS 2022 is the assignee of the Bank and holds the position originally held by the Bank in the Bank Collateral and Bank Loan Documents.  As soon as practical after the Effective Date, in full, final, and complete settlement of the Secured Claim held by JLS 2022, the Reorganized Debtor shall transfer, assign, or convey the following described property to JLS 2022 or its assigns:

i.    A tract of land constituting approximately 209.16 acres located in Young County, Texas, including all structures, improvements, and fixtures located thereon (collectively, the "<u>Bunger Place</u>"), and which is commonly referred to as the Thetford Bunger Place; and

ii.    A 17% of 100% membership interest (whether denominated as membership units or as a membership interest) in Brazos Title, LLC, f/k/a Young County Title, LLC ("<u>Brazos Title</u>").

(b)    The Bunger Place shall be conveyed by the Reorganized Debtor to JLS 2022 pursuant to a special warranty deed in recordable form conveying such property free and clear of all Liens, Claims, interests and charges, except subject to the following: (i) other matters appearing of record as may be mutually agreed upon between by JLS 2022 and the Reorganized Debtor, and (ii) property taxes for years 2025 and earlier.  JLS 2022 or its assigns shall be responsible for property taxes assessed against the Bunger Place for 2025 and later years.

(c)    The membership interest in Brazos Title shall be assigned by the Reorganized Debtor to JLS 2022 free and clear of all Liens, Claims, interests, and charges.  This transfer will result in Jarrod Stephens owning 33%, and JLS 2022 owning 17%, of the membership interests in Brazos Title.

(d)    In addition, the Reorganized Debtor agrees to amend the Company Agreement of Brazos Title to provide, in a manner reasonably acceptable to JLS 2022, that the definitions of a "Simple Majority" and a "Super Majority" both require a vote by, or the agreement of, Jarrod Stephens.

(e)    Once Bunger Place and the membership interest in Brazos Title have been conveyed and transferred to JLS 2022, and the company agreement for Brazos Title has been amended as set forth above, JLS 2022 shall release all Liens and security interests against the Bank Collateral and will mark the Note as paid and deliver it to the Reorganized Debtor.

(f)    Class 8 is impaired.

5.9.    <u>Class 9 – Claims and Interests by Debtor's Spouse</u>

a)    The Spouse has filed the Spouse Claims.  However, the Spouse has withdrawn the Spouse Claims but has retained all rights in the Retained Assets as a part of the community estate owned by her and the Debtor.

b)    Pursuant to *Schlueter v. Schlueter*, 975 S.W. 2d 584 (Tex. 1981) and section 7.009 of the Tex. Family Code, nothing in this Plan shall prejudice either the Spouse's or the Reorganized Debtor's rights to a just and right division of, or her Claim's through the Divorce Action, in and against the Retained Assets.  However, Spouse's rights and Claims in and to the Retained Assets shall be subject to the terms of the Plan, including the payment of Allowed Claims subject to the Plan.

5.10. Class 9 is treated herein as impaired to allow her to assert any rights which she may have to vote to accept or reject the Plan.

5.11. Debtor's Retained Assets. The Debtor shall retain his interest in the Retained Assets, which will automatically vest in him on the Effective Date, although subject to the terms of this Plan and applicable exemptions pursuant to state and federal law. The Reorganized Debtor shall retain all rights and defenses in relation to the Divorce Action and the Spouse's Claims and rights, if any, in the Retained Assets. The Reorganized Debtor's interest in the Retained Assets shall be subject to division between the Debtor and the Spouse through the Divorce Action in accordance with applicable Texas law. The Distributions to holders of Allowed Claims pursuant to this Plan do not include or contemplate any sale or disposition of Exempt Property other than the conveyance of the Bunger Place to JLS 2022.

## ARTICLE VI
## ACCEPTANCE OR REJECTION OF PLAN

6.1. Classes Entitled to Vote. Each impaired Class of Claims entitled to vote shall separately vote to accept or reject the Plan. Any unimpaired Class shall not be entitled to vote to accept or reject the Plan. Any unimpaired Class is deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

6.2. Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have voted on the Plan.

6.3. Elimination of Vacant Classes. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

6.4. Request Pursuant to Section 1191(b). This section shall constitute the request by the Plan proponent, pursuant to section 1191(b) of the Bankruptcy Code, for the Bankruptcy Court to confirm this Plan notwithstanding the fact that the requirements of section 1129(a)(8), (a)(10) or (a)(15) of the Bankruptcy Code have not been met.

## ARTICLE VII
## MEANS OF IMPLEMENTATION OF THE PLAN

7.1. Transfer of Assets. As of the Effective Date, all Assets of the Debtor shall be vested in the Reorganized Debtor free and clear of all Liens, Claims, rights, interests, and charges, except as expressly provided in this Plan. The vesting of the Assets in the Reorganized Debtor shall not alter the characterization of any of such Assets as either separate or community property. The Retained Assets are vested in the Reorganized Debtor subject to all applicable state and federal exemptions.

7.2. Obligation to Make Distributions. The Reorganized Debtor shall make all Distributions pursuant to this Plan.

7.3. Implementing the Plan. The entry of the Confirmation Order shall constitute all necessary authorization for the Debtor and the Reorganized Debtor to take or cause to be taken all actions necessary or appropriate to consummate, implement or perform all provisions of this Plan on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further

approval, act or action under any applicable law, order, rule or regulation.

7.4.    Sale of Furr Place.  The Reorganized Debtor shall promptly market and sell the Furr Place and the resulting net sales proceeds (after paying costs of sale and property taxes, including professional or legal fees incurred by the Reorganized Debtor as a part of the sale) shall be used to fund this Plan as set forth below.  As soon as practicable after the Effective Date, the Reorganized Debtor will list the Furr Place for sale and shall be entitled to sell the Furr Place under the Plan.  The use of a realtor to market the property shall be optional with the Debtor.  However, before consummating such a sale, the Reorganized Debtor shall obtain approval of the sale from the Bankruptcy Court after notice and an opportunity for hearing, as being for a fair price under reasonable commercial terms.  The net proceeds from the sale of the Furr Place, less property taxes, reasonable of costs of sale and broker's fees, if any, shall be used as follows:

a)    The sum of $150,000 shall be paid into the U.S. Treasury as an estimated tax payment on account of any capital gains from the sale of the Furr Place;

b)    To pay Allowed Administrative Expenses, including fees and expenses of Estate Professionals;

c)    The remaining balance of the net sales proceeds shall be used to pay post-Effective Date costs of litigation in connection with the fixing or determination of the Plaintiffs' Class 2 Claims, whether before the State Court or this Court, until such Claims have been finally allowed and fixed pursuant to a Final Non-Appealable Judgment or Final Non-Appealable Order; and

d)    Any remaining balance shall be used to fund the Distribution Fund.

7.5.    Distribution Fund.

a)    The Distribution Fund shall be constituted promptly upon the occurrence of a Distribution Event.  Allowed Claims included in Class 2, 3, and 5 (collectively, the "Distribution Fund Claims") shall be entitled to Distributions through the Distribution Fund.

b)    Upon the occurrence of the Effective Date, the Reorganized Debtor shall open an account with a federally insured bank by depositing $500 into such account.  The Distribution Account shall not be closed until all Distribution Fund Claims have been fully satisfied in accordance with this Plan.

c)    At any time after the Effective Date, either before or after the occurrence of a Distribution Event, the Reorganized Debtor may move the Court to approve, upon appropriate notice and opportunity for hearing the holders of Distribution Funds Claims, a sale of any of the Retained Non-Exempt Assets, and determine what portion of the resulting sale proceeds may be retained by the Reorganized Debtor for his own use, and what portion of such sale proceeds should be deposited into the Distribution Fund.

d)    Until all Distribution Fund Claims have been fully satisfied in accordance with the terms of this Plan, the Reorganized Debtor shall not encumber, sell, transfer, or hypothecate any of the Retained Land, his ownership interest in any of the Business Entities, or his oil and gas interests, except for good cause shown and as approved by an order of the Bankruptcy Court after appropriate notice and opportunity for hearing.  Without limiting the generality of the immediately preceding sentence, the Reorganized Debtor may seek leave to sell or hypothecate any of such assets (including the Retained Land) to pay any income taxes attributable to capital gains from the sale of any Retained Non-Exempt Assets, property taxes against Retained Non-

Exempt Assets for tax years 2026 and later, and post-Effective Date costs of litigation in connection with fixing or determining the Plaintiffs' Class 2 Claims, whether before the State Court or this Court, until such Claims have been finally allowed and fixed pursuant to a Final Non-Appealable Judgment or Final Non-Appealable Order.  However, nothing in this section shall prevent or apply to a sale of any Retained Non-Exempt Asset for the purpose of constituting the Distribution Fund. In relation to professional fees sought to be paid by the Debtor, the Debtor's professionals shall file in this Bankruptcy Case a copy of any invoice (redacted to preserve confidentiality) for services or expenses incurred from and after the Plan Effective Date within fourteen (14) days after any such invoice is provided to the Reorganized Debtor and / or, under Section 7.5(c) of the Plan, within fourteen (14) days after the Debtor requests that the court authorize the Debtor to sell Retained Non-Exempt Assets wherein the Debtor is seeking to retain funds for his own use, until such time as Plaintiffs' Allowed Claims, if any, have been fully paid as provided under the Plan.

e)        The Reorganized Debtor shall timely pay all property taxes assessed against the Retained Land for tax years 2025 and thereafter.

f)        Within 7 days after the occurrence of a Distribution Event, the Reorganized Debtor shall file and serve upon creditors and parties in interest a notice ("Distribution Notice") that a Distribution Event has occurred.

g)        Within 14 days after the service of the Distribution Notice, the Reorganized Debtor shall file and serve on the holders of Distribution Fund Claims a plan of disposition ("Disposition Plan") reflecting the manner in which the Reorganized Debtor intends to liquidate Retained Non-Exempt Assets to satisfy the Distribution Fund Claims in accordance with the terms of the Plan.  Because the Debtor has been successful in the past in selling significant tracts of land without brokers, the use of brokers to sell the land included in the Retained Non-Exempt Assets shall be the Reorganized Debtors' option.  The Disposition Plan shall include the following:

i.        Specify the Retained Non-Exempt Assets the Reorganized Debtor proposes to sell to fund the Distributions from the Distribution Fund;

ii.        If applicable, the brokers or other sales agents with which the property has been listed and the amount of the proposed commission to each broker; and

iii.        The initial asking price each of such Retained Non-Exempt Assets.

h)        Within 14 days after the service of the Disposition Plan, any holder of a Distribution Fund Claim may object to the proposed Disposition Plan, including on the basis that the Disposition Plan fails to include sufficient property to satisfy all Distribution Fund Claims. Thereafter, the objection may be heard with notice only to the holders of Distribution Fund Claims.  The version of the Distribution Plan approved by the Bankruptcy Court shall then become the Distribution Plan for all purposes, although subject to amendment and supplementation by the Reorganized Debtor.  Subject to subsection (l) below, the Reorganized Debtor shall have sole authority and responsibility to propose, implement, and perform the Disposition Plan

i)        The Reorganized Debtor may close and consummate the sale of any property reflected in the Disposition Plan without further order of the Court so long as the funded gross sales price is equal to at least 90% of the proposed asking price reflected in the Disposition Plan.  The Reorganized Debtor shall be entitled to pay reasonable and ordinary closing costs and other costs of sale from the sales proceeds, which may include a commission to any real estate broker not to exceed 6% as well as the costs of any owner's policy of title insurance.

j)    If the proposed sales price for any asset included in the Disposition Plan is less than 90% of that proposed in the Disposition Plan, the Reorganized Debtor must obtain an order authorizing the sale for the Bankruptcy Court.  Such a motion may be heard by the Bankruptcy Court on ten (10) days' notice to the holders of Distribution Fund Claims.

k)    The Reorganized Debtor may modify the Distribution Plan from time-to-time, including to add or remove properties or alter the proposed sales price of any included property. Within 14 days after the service of any amended Distribution Plan, any holder of a Distribution Fund Claim may object, and the objection may thereafter be heard or notice only to the holders of Allowed Distribution Fund Claims.  If no objection is made to, or the modified Distribution Plan is approved by the Bankruptcy Court, the modified Distribution Plan shall then become the Distribution Plan for all purposes.

l)    Any holder of a Distribution Fund Claim may at any time move the Court to add additional property to the Distribution Plan on such terms as the Bankruptcy Court may order or to which the Reorganized Debtor may agree.

m)    Upon the closing of a sale of an asset subject to the Disposition Plan, the Reorganized Debtor shall serve a notice thereof upon the holders of Distribution Fund Claims reflecting the net proceeds ("Distribution Fund Sale Proceeds") for deposit directly into the Distribution Fund.

n)    The sale of the Retained Non-Exempt Assets pursuant to this Plan will give rise to professional and legal fees incident to the sale, as well as potential income tax liability for the Reorganized Debtor based on capital gains arising from the sale.  To the extent that any such sale of any Retained Non-Exempt Asset generates taxable income not otherwise offset by losses or other tax attributes held by the Reorganized Debtors, so that the sale may generate an income tax obligation by the Reorganized Debtor, the Reorganized Debtor shall be entitled to use the Distribution Fund Sale Proceeds to pay the taxes projected to be generated by such sales of assets to fund the Distribution Fund.  The Reorganized Debtor shall also be entitled to pay from the Distribution Fund Proceeds legal and professional costs attributable to any such sale of a Retained Non-Exempt Asset.  Within fourteen (14) days after the receipt of the Distribution Fund Sale Proceeds, the Reorganized Debtor shall serve a notice upon holders of Distribution Fund Claims as to the amount of such funds (collectively, the "Tax Reserve Fund") to be used and held back to pay income taxes arising from the sale.  Any holder of a Distribution Fund Claim may file an objection to any proposed hold back to fund the Tax Reserve Fund, in which case the Bankruptcy Court will determine the amount of the Tax Reserve Fund to be held back on account of any such sale of any of such Retained Non-Exempt Assets.  The Tax Reserve Fund shall be paid by the Reorganized Debtor to the U.S. Treasury through quarterly estimated deposits of income taxes.  If the Tax Reserve Fund retained during any calendar year are insufficient to satisfy the income tax arising from such sale, the Reorganized Debtor may move the Court to allow him to use additional Distribution Fund Sale Proceeds or to sell additional Retained Non-Exempt Assets as may be necessary to pay such income taxes.

o)    Holders of Distribution Fund Claims shall receive a Pro Rata Share of each Distribution from the Distribution Fund.  Distributions from the Distribution Fund shall be allocated first to satisfy any and all Distribution Fund Claims which do not consist of Exemplary Damages, then to satisfy any Distribution Fund Claims which consist of Exemplary Damages, and then to interest pursuant to section 726(a)(5).

p)    The Reorganized Debtor may at any time move the Bankruptcy Court to authorize the sale of any Retained Non-Exempt Asset with all or some part of the resulting sale

proceeds, as may be authorized by order of the Bankruptcy, to be paid into the Distribution Fund.

q)  The Reorganized Debtor must satisfy the Distribution Fund Claims within the following time frame:

i.  At least 60% of the principal amount of all Distribution Fund Claims (other than those based on Exemplary Damages) must be paid within eight (8) months after the service of the initial Disposition Plan; provided, however, if the aggregate principal amount of all Distribution Fund Claims is less than $1,000,000, then the full principal and amount of all Distribution Fund Claims shall be paid within eight (8) months of the Effective Date;

ii.  The remainder of the principal amount of the Distribution Fund Claims (other than those based on Exemplary Damages), along with all post-petition interest thereon, must be paid within twelve (12) months after the service of the initial Disposition Plan; and

iii.  All Allowed Distribution Fund Claims based upon Exemplary Damages, along with all post-petition interest thereon, must be paid in full within fifteen (15) months after the service of the initial Disposition Plan.

However, any term of this Plan notwithstanding, all Distribution Fund Claims must be satisfied in accordance with this Plan within five (5) years after the Effective Date.

7.6.  Custodian of the Distribution Fund.  The Distribution Fund (including the Litigation Fund) shall be held by the Reorganized Debtor in a separate, segregated account which shall only be used by the Reorganized Debtor for the purposes set forth in the Plan. Once all Allowed Claims payable from the Distribution Fund have been paid in accordance with the terms of the Plan, any funds held in the Distribution Fund may be returned to the Reorganized Debtor for his own use.

7.7.  Default Remedies.  If the Reorganized Debtor fails to satisfy in full the holders of Distribution Fund Claims within the timeframe provided in section 7.5(q), then the holders of such Allowed Claims may exercise the following remedies:

i.  Commencement before the Bankruptcy Court of a contested proceeding to compel performance of the Plan and payment from the Distribution Fund;

ii.  Seek conversion of the Bankruptcy Case to a Chapter 7 liquidation; or

iii.  Commence a lawsuit in a court of competent jurisdiction to enforce the terms of the Plan.

7.8.  Disposable Income.  The Assets utilized to pay Allowed Administrative Expenses, including those of Estate Professionals, and the Assets transferred to JLS 2022 in satisfaction of its secured claim, have a value far in excess of the Reorganized Debtor's projected Disposable Income over the three (3) years following the Effective Date.

7.9.  Debtor's Spouse and the Divorce Action.  Subject to the terms of this Plan, including the payment of Distribution Fund Claims, the Retained Assets shall be subject to division among the Reorganized Debtor and the Spouse in accordance with applicable law as a part of the Divorce Action.  This shall be without prejudice to the rights of either Reorganized Debtor or the Spouse to assert that any of the Retained Assets constitute his or her separate property.  Subject to the treatment and the payment of Allowed Claims in accordance with the

terms of this Plan, both the Spouse and the Reorganized Debtor shall retain their respective rights to seek any available relief each against the other or in relation to the Retained Assets through the Divorce Action.  However, the Spouse may not, in exercising any of such rights, interfere with the performance by the Debtor of the Plan, or the rights of any Creditor pursuant to the Plan, or any Distribution to the holders of Allowed Claims pursuant to this Plan, including any right to any Distribution through the Distribution Fund.

7.10.  <u>Section 505 Powers</u>.  All rights and powers pursuant to section 505 of the Bankruptcy Code are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date.

7.11.  <u>Section 510(c) Powers</u>.  All rights and powers to seek or exercise any right or remedy of equitable subordination or are hereby reserved to the Estate and shall be transferred to, and vested in, the Reorganized Debtor as of the Effective Date as Estate Defenses.

7.12.  <u>Section 506(c) Powers</u>.  The Estate hereby reserves all rights and powers pursuant to section 506(c) of the Bankruptcy Code, and all such rights shall be specifically transferred to, and vested in, the Reorganized Debtor.

7.13.  <u>Plan Injunction</u>.  The Reorganized Debtor shall have full power, standing and authority to enforce the Plan Injunction against any Person, either through an action before the Bankruptcy Court or any other tribunal having appropriate jurisdiction.

7.14.  <u>Subchapter V Trustee</u>.  Upon the Effective Date, the Subchapter V Trustee shall be discharged.

7.15.  <u>Estimation of Claims</u>.  To the full extent allowed by 28 U.S.C. section 1334, from and after the Effective Date, the Bankruptcy Court shall have and retain full power and jurisdiction to estimate any Claim (including Plaintiffs' Class 2 Claims), and the Reorganized Debtor may seek estimation from and after the Effective Date of any Claim, including to the full extent allowed by section 502(c).  This provision shall also be deemed to be, and hereby is, incorporated in section 14.1 of the Plan.

7.16.  <u>Interest Rate</u>.  Interest on Allowed Class 3 and 4 claims shall mean the federal judgment rate of interest pursuant to 28 U.S.C. section 1961.  *Cadle Co. of Ohio, Inc. v. Kravitz* (*In re Kravitz*), 2001 Bankr. LEXIS 2347, *8 (1st Cir. B.A.P. Feb. 16, 2001), citing *In re Melenyzer*, 143 B.R. 829, 832 (Bankr. W.D. Tex. 1992).

**ARTICLE VIII**
**PROVISIONS GOVERNING DISTRIBUTIONS**

8.1.  <u>Distributions</u>.  The Reorganized Debtor shall be responsible for making all Distributions to holders of Allowed Claims.

8.2.  <u>Timing and Amount of Distributions</u>.  No Distribution shall be made on account of any Claim until such Claim is Allowed, except as otherwise set forth in this Plan or otherwise ordered by the Bankruptcy Court.  No Distribution shall be made on account of any Contested Claim until such Claim is Allowed.  Except as expressly set forth in the Plan or in the Confirmation Order, the Reorganized Debtor shall, in the exercise of his good faith business judgment, determine the timing and amount of all Distributions which are required to be made under the Plan, consistent with the goal of making such Distributions as expeditiously as reasonably possible.  The Reorganized Debtor may, but shall not be required to, seek approval of, or any other appropriate relief from, the Bankruptcy Court with respect to any of such Distributions.  Any Unclaimed Property may be paid into the registry of the Bankruptcy Court or

otherwise distributed in accordance with the orders of the Bankruptcy Court.

8.3.    Projected Disposable Income: Pursuant to section 1191(c)(2)(B), the Debtor will make Distributions pursuant to the Plan having a value in excess of the Reorganized Debtor's projected Disposable Income for the three (3) year period after the Effective Date. The amount necessary to pay an Allowed Administration Expense Claim and the property transferred to JLS 2022 is substantially greater than such projected Distributions of the Reorganized Debtor's Disposable Income.

8.4.    Means of Cash Payment. Cash payments pursuant to this Plan shall be made by check drawn on, or by wire transfer from, a domestic bank, or by other means agreed to by the payor and payee.

8.5.    Record Date for Distributions. As of the close of business on the Effective Date (the "Distribution Record Date"), the register for Claims and Interests will be closed, and there shall be no further changes in the holder of record of any Claim or Interest. Although there is no prohibition against the transfer of any Claim by any Creditor, the Reorganized Debtor shall have no obligation to recognize any transfer of any Claims or Interests occurring after the Distribution Record Date, and the Reorganized Debtor shall instead be authorized and entitled to recognize and deal for all purposes under this Plan, including for the purpose of making all Distributions, with only those holders of Claims so reflected as of the Distribution Record Date. However, the Reorganized Debtor may, in the exercise of his good faith business judgment, agree to recognize transfers of Claims after the Distribution Record Date, but shall have no obligation to do so.

8.6.    Delivery of Distributions. All Distributions, deliveries and payments to the holders of any Allowed Claims shall be made to the addresses set forth on the respective proofs of Claim filed in this Bankruptcy Case by such Claimants or, if the Distribution is to be made based on a Claim reflected as Allowed in the Schedules, at the address reflected in the Schedules. Any such Distribution, delivery or payment shall be deemed as made for all purposes relating to this Plan when deposited in the United States Mail, postage prepaid, addressed as required in the preceding sentence. If any Distribution is returned as undeliverable, no further Distribution shall be made on account of such Allowed Claim unless and until the Reorganized Debtor are notified of such holder's then current address, at which time all missed Distributions shall be made to the holder of such Allowed Claim. However, all notices to the Reorganized Debtor reflecting new or updated addresses for undeliverable Distributions shall be made on or before one hundred twenty (120) days after the date of the attempted Distribution or such longer period as the Reorganized Debtor may fix in the exercise of his sole discretion. After such date, all Unclaimed Property shall revert to the Reorganized Debtor and the Claim of any holder with respect to such property shall be discharged and forever barred.

8.7.    W-9 Forms. W-9 forms must be provided to the Reorganized Debtor within thirty (30) days of a request made by the Reorganized Debtor. If no W-9 form is provided within thirty (30) days of such request, the Claim of such person or entity shall be discharged and forever barred.

8.8.    Time Bar to Cash Payments. Checks issued in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before one hundred twenty (120) days after the date of issuance of such check or such longer period as the Reorganized Debtor may fix. After such date, all Claims in respect of void checks shall be discharged and forever barred.

8.9.    Cure Period.  Except as otherwise set forth herein, the failure by the Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan, or to make any payment or Distribution required by this Plan to any Creditor, or the failure to make any payment or perform any covenant on any note, instrument or document issued pursuant to this Plan, shall not constitute an event of default unless and until the Reorganized Debtor has been given thirty (30) days written notice of such alleged default in the manner provided in this Plan, and provided an opportunity to cure such alleged default.  Until the expiration of such thirty (30) day cure period, the Reorganized Debtor shall not be in default, and performance during such thirty (30) day cure period shall be deemed as timely for all purposes.  Such written notice and passage of the thirty (30) day cure period shall constitute conditions precedent to declaring or claiming any default under this Plan or bringing any action or legal proceeding by any Person to enforce any right granted under this Plan.

8.10.    Distributions after Substantial Consummation.  All Distributions of any kind made to any Creditor after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

8.11.    No penalty for prepayments.  Notwithstanding anything to the contrary in this Plan, the Reorganized Debtor may prepay (without penalty) any Allowed Claim.

## ARTICLE IX
## RETENTION OF ESTATE CLAIMS AND ESTATE DEFENSES

9.1.    Retention of Estate Claims.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Claims shall be transferred to, and vested in, the Reorganized Debtor, both for purposes of seeking an affirmative recovery against any Person and as an offset or defense against any Claim asserted against the Estate or Reorganized Debtor.  Without limiting the generality of the foregoing, all applicable legal privileges of the Debtor or Estate, including both the attorney-client privilege and the work product privilege, shall be vested in the Reorganized Debtor which shall be clothed with the sole and exclusive standing and authority to assert any such privilege on behalf of the Debtor, Estate, or Reorganized Debtor.  All Estate Claims shall be deemed to have been transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.

Without limiting the effectiveness or generality of the foregoing reservation, out of an abundance of caution, the Debtor and the Estate hereby specifically reserve and retain the Retained Causes of Action. The provisions of this Article of the Plan are provided in the interest of providing maximum disclosure of the Estate Claims of which the Debtor is presently aware and shall not act as a limitation on the potential Estate Claims that may exist.  It is the specific intention of this Plan that all Avoidance Actions and all associated remedies, and any other causes of action, whether arising before or after the Petition Date, and whether arising under the Bankruptcy Code or applicable state or federal non-bankruptcy laws shall all be retained and preserved under this Plan to be transitioned to, and vested in the Reorganized Debtor.  All Estate Claims are retained both as causes of action for an affirmative recovery and as counterclaims and offset to any Claims asserted against the Estate.

9.2.    Retention of Estate Defenses.  Except as otherwise specifically provided in this Plan, pursuant to section 1123(b)(3) of the Bankruptcy Code, all Estate Defenses shall be transferred to, and vested in, the Reorganized Debtor.  For this purpose, all Estate Defenses are hereby reserved and retained by the Debtor and the Estate, including without limitation all

such Estate Defenses available to the Estate pursuant to section 558 of the Bankruptcy Code. All Estate Claims shall be deemed as transferred to, and vested in, the Reorganized Debtor as of the Effective Date based on the entry of the Confirmation Order.  Without limiting the generality of the foregoing, the Reorganized Debtor retains all defenses and affirmative defenses to the Claims asserted by the Plaintiffs in the Severed Adversary Proceeding or Lawsuit, including the following:

       a)       All defenses, affirmative defenses, or matters in avoidance asserted or claimed by the Debtor in any pleading on behalf of the Debtor in the Adversary Proceeding, the Lawsuit, or the Severed Lawsuit, including all such defenses, affirmative defenses, or matters in avoidance asserted in any such pleadings filed on behalf of the Debtor, or which could have been raised, while the Lawsuit was pending in state court;

       b)       All matters, defenses, affirmative defenses, and claims by the Debtor set forth in the Briefs filed at docket nos. 52, 62, 68, 84 and 85 in the Adversary Proceeding;

       c)       All matters or defenses and affirmative defenses asserted in the Debtor's Objection to the Plaintiffs' POCs, or which form the basis of the Plaintiffs' Claim Orders disallowing Plaintiffs' POCs;

       d)       All matters, defenses and claims asserted or assertable by the Debtor in connection with Plaintiffs' appeal of the Final Judgment and/or Plaintiffs' Claim Orders, including in the following case: *Tiburon Land and Cattle, LP, et al., v. Kerwin Burl Stephens*, Case No. 4:24-cv-01106-P in the United States District Court for the Northern District of Texas, Fort Worth Division; and

       e)       All rights to any settlement credit.

       In relation to the foregoing, it is the intent of the Plan that the Reorganized Debtor shall receive and retain as Estate Defenses all defenses, affirmative defenses, offsets, counterclaims, settlement credits, or other matters or issues heretofore raised, or which could be raised, by the Debtor or Reorganized Debtor in relation to the Adversary Proceeding, the Severed Lawsuit or Plaintiffs' appeal, or as a defense to the claims asserted in Plaintiffs' POCs.

       9.3.    <u>Assertion of Estate Claims and Estate Defenses</u>.  The Reorganized Debtor shall have, and be vested with, the exclusive right, authority and standing to assert all Estate Claims and Estate Defenses for the benefit of the Reorganized Debtor.

**ARTICLE X**
**<u>PROCEDURES FOR RESOLVING AND TREATING CONTESTED CLAIMS</u>**

       10.1.    <u>Claims Listed in Schedules as Disputed</u>.  Any Claim which is listed in the Schedules as unliquidated, contingent or disputed, and for which no proof of Claim has been timely filed, shall be considered as Disallowed as of the Effective Date without the necessity of any further action by the Reorganized Debtor or further order of the Bankruptcy Court other than the entry of the Confirmation Order.  The Plaintiffs' Claims, including any Plaintiff POC, shall all constitute Contested Claims for purposes of this Plan.

       10.2.    <u>Responsibility for Objecting to Claims and Settlement of Claims</u>.  The Reorganized Debtor shall have the exclusive standing and authority to either object to or settle and compromise any Objection to any Claim, including as follows:

       (a)       From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to (i) file, settle, or litigate to Final Order any Objections to any Claims; and (ii) seek to subordinate any Claim.  Any Contested Claim may be litigated to Final Order by the

Reorganized Debtor; and

(b)        From and after the Effective Date, the Reorganized Debtor shall have the sole and exclusive right to settle, compromise, or otherwise resolve any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court.  Bankruptcy Rule 9019 shall not apply to any settlement or compromise of a Contested Claim after the Effective Date.

10.3.    Objection Deadline.  All Objections to Claims shall be served and filed by the Objection Deadline; provided, however, the Objection Deadline shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of Claim.  The Reorganized Debtor may seek to extend the Objection Deadline pursuant to a motion filed on or before the then applicable Objection Deadline.  Any such motion may be granted without notice or a hearing.  In the event that the Reorganized Debtor files such a motion and the Bankruptcy Court denies such motion, the Objection Deadline shall nevertheless be automatically extended to that date which is ten (10) Business Days after the date of entry of the Bankruptcy Court's order denying such motion.  Any proof of Claim other than one based upon a Rejection Claim and which is filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to by the Reorganized Debtor.  Nothing contained herein shall limit the right of the Reorganized Debtor to object to Claims, if any, filed or amended after the Objection Deadline.

10.4.    Response to Claim Objection.  If the Reorganized Debtor files an Objection to any Claim, then the holder of such Claim shall file a written response to such Objection within twenty-four (24) days after the filing and service of the Objection upon the holder of the Contested Claim.  Each such Objection shall contain appropriate negative notice advising the Creditor whose Claim is subject to the Objection of the requirement and time period to file a response to such Objection and that, if no response is timely filed to the Objection, the Bankruptcy Court may enter an order that such Claim is Disallowed without further notice or hearing.

10.5.    Distributions on Account of Contested Claims.  No Distribution shall be made on account of a Contested Claim until Allowed.  Until such time as a contingent Claim becomes fixed and absolute by a Final Order Allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and Distributions under the Plan.  Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

10.6.    No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in this Plan or the Confirmation Order shall waive, relinquish, release, or impair the Reorganized Debtor's right to object to any Claim.

10.7.    Offsets and Defenses.  The Reorganized Debtor shall be vested with and retain all Estate Claims and Estate Defenses, including without limitation all rights of offset or recoupment and all counterclaims against any Claimant holding a Claim.  Assertion of counterclaims by the Reorganized Debtor against any Claim asserted against the Estate or Reorganized Debtor shall constitute "core" proceedings.

10.8.    Claims Paid or Reduced Prior to Effective Date.  Notwithstanding the contents of the Schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtor prior to the Effective Date, including pursuant to orders of the Bankruptcy Court. To the extent such payments are not reflected in the Schedules, such Schedules will be deemed amended and reduced to reflect that such payments were made.  Nothing in the Plan shall preclude the Reorganized Debtor from paying

Claims that the Debtor was authorized to pay pursuant to any Final Order entered by the Bankruptcy Court prior to the Confirmation Date.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1.    <u>Assumption and Rejection of Executory Contracts</u>. This Plan shall constitute a motion to assume Executory Contracts except as expressly set forth in this section.  All Executory Contracts shall be deemed assumed by the Debtor upon the Effective Date, unless an Executory Contract (a) is identified on the Schedule of Rejected Executory Contracts, (b) has been previously assumed or rejected pursuant to an order of the Bankruptcy Court, (c) is identified in this Plan or the Confirmation Order to be rejected, or (d) is the subject of a motion to reject filed on or before the Confirmation Date.  The Debtor may file a motion for the assumption or rejection of any Executory Contract at any time through the Effective Date and such motion shall be determined by the Bankruptcy Court thereafter.

11.2.    <u>Cure Claim Payments</u>.  To the extent any Cure Claims exist for any Executory Contracts to be assumed hereunder, they shall be treated as provided in this section.  Unless the holder of a Cure Claim and the Debtor or Reorganized Debtor agree in writing to other treatment of such holder's Cure Claim, or other treatment of such holder's Cure Claim is otherwise provided for under the Plan, any cure payment which may be required by section 365(b)(1) of the Bankruptcy Code under an Executory Contract that is assumed under this Plan shall be made by the applicable Reorganized Debtor on the Initial Distribution Date. Notwithstanding the foregoing, in the event of a dispute regarding the amount of any Cure Claim, the cure of any other defaults, the provision of adequate assurance of future performance, or any other matter pertaining to assumption, the Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by section 365(b)(1) of the Bankruptcy Code, following the entry of a Final Order by the Bankruptcy Court resolving such dispute.

11.3.    <u>Bar to Rejection Claims</u>.  Except as otherwise ordered by the Bankruptcy Court, any Rejection Claim based on the rejection of an Executory Contract shall be forever barred and shall not be enforceable against the Reorganized Debtor or the Assets unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor and his bankruptcy counsel, or the Reorganized Debtor and his counsel, as the case may be, by the earlier of thirty (30) days after the Effective Date or thirty (30) days after entry of the Final Order approving rejection of such Executory Contract.

11.4.    <u>Rejection Claims</u>.  Any Rejection Claim not barred by section 11.3 above shall be classified as Class 3, all subject to the provisions of sections 502(b)(6) and 502(g) of the Bankruptcy Code; <u>provided, however</u>, that any Rejection Claim based upon the rejection of an unexpired lease of real property, either prior to the Confirmation Date, upon the entry of the Confirmation Order, or upon the Effective Date, shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.  All Rejection Claims shall be deemed as Contested Claims until Allowed.  Nothing contained herein shall be deemed as an admission by the Debtor or the Reorganized Debtor that the rejection of any Executory Contract gives rise to or results in a Rejection Claim or shall be deemed as a waiver by the Reorganized Debtor of any objections or defenses to any such Rejection Claim if asserted.

11.5.    <u>Reservation of Rights</u>.  Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is in fact an Executory Contract or that the Debtor or Estate have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the

Reorganized Debtor shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS OF PLAN

12.1.   Conditions to Confirmation and Effectiveness of Plan.  The Plan shall not become effective until the following conditions shall have been satisfied and which may occur concurrently with the Effective Date: (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtor; (b) the necessary Plan Documents have been executed and delivered, and (c) all other conditions specified by the Debtor have been satisfied.

12.2.   Notice of the Effective Date.  Promptly upon the occurrence of the Effective Date, the Reorganized Debtor shall cause to be filed with the Court and served on all Creditors and parties-in-interests, a notice of the Effective Date.

## ARTICLE XIII
## EFFECT OF THE CONFIRMATION OF THE PLAN

13.1.   Compromise and Settlement.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the classification, potential Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests and controversies subject to, or dealt with, under this Plan, including, without limitation, all Claims against the Debtor or Estate arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, fixed or contingent, arising out of, relating to or in connection with the business or affairs of, or transactions with, the Debtor or the Estate.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements embodied in this Plan, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interest of the Debtor, the Debtor's bankruptcy Estate, Creditors and other parties-in-interest, and are fair, equitable and within the range of reasonableness.  The rights afforded in the Plan and the treatment of all Claims and Interests herein shall be in exchange for, and in complete satisfaction and release of, all Claims and Interests of any nature whatsoever against and in the Debtor, the Estate, and the Assets. Except as otherwise provided herein, all Persons shall be precluded and forever barred by the Plan Injunction from asserting against the Debtor and their affiliates, successors, assigns, the Estate or the Assets or Reorganized Debtor any event, occurrence, condition, thing, or other or further Claims or causes of action based upon any act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

13.2.   Discharge. The terms, covenants and consideration under the Plan shall be in exchange for, and in complete satisfaction, discharge, and release of, all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor, and the Assets as of the Effective Date.  Pursuant to section 1192, the Reorganized Debtor shall be deemed to be fully and finally discharged and shall be granted a discharge pursuant to section 1141(d)(1)(A) of the Bankruptcy Code once all Distribution Fund Claims have been fully satisfied or all Retained Non-Exempt Assets liquidated.  Pursuant to section 362(c), the automatic stay shall continue in full force and effect until the Reorganized Debtor is granted or denied his discharge under section 1192.

13.3.   **Plan Injunction.  This section is referred to herein and in the Confirmation Order as the "Plan Injunction."  As used in this Plan Injunction provision, the following terms shall have the following meanings: (i) the terms "Claim" or "Claimant" shall include any Claim by any Claimant against the Debtor, including any Claim against, right to payment from, or any interest in, any of the Assets, based on any Claim that arose or accrued in whole or in part on or before the Effective Date, and (ii) the term "Protected Persons" shall include the Debtor, the Reorganized Debtor, and/or JLS 2022, and the term the "Protected Assets" shall include all Retained Assets (including the proceeds or products thereof) transferred to or vested in the Reorganized Debtor pursuant to this Plan, as well as the proceeds and products thereof.**

**From and after the Effective Date, all Claimants are hereby permanently enjoined and prohibited, directly or indirectly, from and against all of the following:  (a) the commencement or continuation in any manner of any action, Claim, lawsuit, or other proceeding of any type or nature against or in relation to any of the Protected Persons or Protected Assets, including any act to collect or enforce any Claim or right against any of the Protected Persons or Protected Assets, other than through the terms of the Plan, (b) the creation, perfection, or enforcement of any Lien, Claim, right, burden, change, or interest against any of the Protected Persons or Protected Assets other than through the terms of the Plan, and (c) taking any action in relation to any Protected Persons or Protected Assets which violates or which does not conform to the terms of this Plan; provided, however, that the enforcement of rights granted pursuant to this Plan shall not violate this Plan Injunction; provided, further, however, that with respect to JLS 2022, it shall only constitute one of the Protected Persons with respect to transactions for the satisfaction of the Class 8 Claims or the transfer of property to it to satisfy the Class 8 Claims.  The Plan Injunction shall inure to the benefit of, and may be enforced by, the Reorganized Debtor and JLS 2022. The Plan Injunction extends to JLS 2022 only with respect to transactions for the satisfaction of the Class 8 Claims or the transfer of property to it to satisfy the Class 8 Claims and shall not extend to transactions beyond what is set out in Section 5.8 of the Plan.**

**Notwithstanding the above, and consistent with the Bankruptcy Court's Order modifying the automatic stay, the continuance of the Lawsuit or Adversary Proceeding by Plaintiffs until the liquidation of Plaintiffs' Claims, including the resolution of any appeals relating to the Lawsuit or Adversary Proceeding, shall not be considered a violation of the Plan Injunction.  The Debtor and Plaintiffs understand and agree that regardless of where the Plaintiffs' Claims are liquidated, the Bankruptcy Court retains exclusive jurisdiction to determine the ultimate allowance of Plaintiffs' Claims in this Bankruptcy Case.**

13.4.   Setoffs.  Except as otherwise expressly provided for in the Plan, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, the Reorganized Debtor may setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before such Distribution is made), any Claims, rights, Estate Claims and Estate Defenses of any nature that the Debtor may hold against the holder of such Allowed Claim, to the extent such Claims, rights, Estate Claims and Estate Defenses against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise) including without limitation any right to a settlement credit against Plaintiffs' proofs of claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release of any such Claims, rights, Estate Claims and Estate Defenses that the Estate may

possess against such Claimant.  In no event shall any Claimant or Interest holder be entitled to set off any Claim or Interest against any Claim, right, or Estate Claim of the Debtor without the consent of the Debtor or the Reorganized Debtor unless such holder files a motion with the Bankruptcy Court requesting the authority to perform such setoff notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

13.5.  <u>Disclosures Relating to Equitable Subordination and Setoffs</u>. The Plan provides that all rights and powers to seek or exercise any right or remedy of equitable subordination are preserved and reserved to the Estate.  Likewise, the Plaintiffs reserve the right to object to the assertion of any such claim by the Reorganized Debtor.  The Plan additionally provides that the Debtor and the Reorganized Debtor may exercise all applicable rights of setoff.  For purposes of disclosure only, and not for the purpose of limiting any such reservations of rights, the Debtor represents as follows: (a) The Debtor or Reorganized Debtor may seek to equitably subordinate the portion of Plaintiffs' claims, if any, that represents exemplary damages or equitable remedies asserted by Plaintiffs; and (b) The Debtor or Reorganized Debtor intend to seek an appropriate settlement credit based on the Plaintiffs' settlement with the Tommy Taylor estate, and may seek an appropriate settlement credit or other credit based on agreements between the Plaintiffs and Intervenors. For disclosure purposes, the Debtor and Reorganized Debtor currently do not have knowledge of equitable subordination claims against the Plaintiffs other than as set forth in Sections 2.51 and 7.5(o) of the Plan.

13.6.  <u>Recoupment.</u>  Except as otherwise expressly provided for in the Plan, in no event shall any holder of Claims or Interests be entitled to recoup any Claim or Interest against any Claim, right, account receivable, or Estate Claim of the Debtor or the Reorganized Debtor unless (a) such holder actually provides notice thereof in writing to the Debtor or the Reorganized Debtor of its intent to perform a recoupment; (b) such notice includes the amount to be recouped by the holder of the Claim or Interest and a specific description of the basis for the recoupment, and (c) the Debtor or the Reorganized Debtor have provided a written response to such Claim or Interest holder, stating unequivocally that the Debtor or the Reorganized Debtor consent to the requested recoupment.  The Debtor and the Reorganized Debtor shall have the right, but not the obligation, to seek an order of the Bankruptcy Court allowing any or all of the proposed recoupment.  In the absence of a written response from the Debtor or the Reorganized Debtor consenting to a recoupment or an order of the Bankruptcy Court authorizing a recoupment, no recoupment by the holder of a Claim or Interest shall be allowed.

13.7.  <u>Turnover</u>.  On the Effective Date, any rights of the Estate to compel turnover of Assets under applicable non-bankruptcy law and pursuant to section 542 or 543 of the Bankruptcy Code shall be deemed transferred to and vested in the Reorganized Debtor.

13.8.  <u>Automatic Stay</u>.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Reorganized Debtor is either granted or denied his discharge pursuant to section 1192.

**ARTICLE XIV**
**<u>JURISDICTION OF COURTS AND MODIFICATIONS TO THE PLAN</u>**

14.1.  <u>Retention of Jurisdiction</u>.  Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to this Bankruptcy Case and the Plan, to the full extent allowed or permitted by applicable law, including without limitation for the purposes of invoking sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)  To hear and determine any and all objections to, or applications or motions concerning, the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense;

(b)  To hear and determine any and all applications for payment of fees and expenses pursuant to this Plan to any Estate Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under this Plan, and any and all objections thereto;

(c)  To hear and determine pending applications for the rejection, assumption, or assumption and assignment of Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect to the assumption or rejection of any Executory Contract;

(d)  To hear and determine any and all adversary proceedings, applications, or contested matters, including in relation to the allowance of any Claim, including with respect to the Adversary Proceeding and the Claims asserted by the Plaintiffs;

(e)  To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan in connection with the enforcement of any remedies made available under the Plan, including without limitation, (i) adjudication of all rights, interests or disputes relating to any of the Assets, (ii) the valuation of all Collateral, (iii) the determination of the validity of any Lien or claimed right of offset; (iv) determinations of Objections to Contested Claims; and (v) the adjudication, determination, and fixing of any Contested Claims;

(f)  To liquidate and administer any disputed, contingent, or unliquidated Claims, including the adjudication and liquidation of all Contested Claims;

(g)  To administer Distributions to holders of Allowed Claims as provided herein or in the Confirmation Order;

(h)  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(i)  To hear and determine all matters relating to or pending in or in relation to the Adversary Proceeding and to Plaintiffs' Appeal of the Final Judgment and Plaintiffs' Claim Orders, including without limitation, adjudicating any matter remanded to the Bankruptcy Court in connection with Plaintiffs' Appeal.

(j)  To consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation the Confirmation Order;

(k)  To enforce the Plan Injunction against any Person;

(l)  To enter and implement all such orders as may be necessary or appropriate to execute, interpret, construe, implement, consummate, or enforce the terms and conditions of this Plan or the Confirmation Order and the transactions required or contemplated pursuant thereto;

(m)  To hear and determine any motion or application which the Reorganized Debtor is required or allowed to commence before the Bankruptcy Court pursuant to this Plan or the Confirmation Order;

(n)  To hear and determine any other matter not inconsistent with the Bankruptcy

Code and title 28 of the United States Code that may arise in connection with or related to the Plan;

(o)    To determine proceedings pursuant to section 505 of the Bankruptcy Code;

(p)    To enter a Final Decree closing this Bankruptcy Case; and

(q)    To determine any other matter or dispute relating to the Estate or the Assets and the Distribution thereof.

14.2.    Abstention and Other Courts.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Bankruptcy Case, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.3.    Non-Material Modifications.  The Reorganized Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.  The Reorganized Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the Interest of any Interest holder who has not accepted in writing the modification.

14.4.    Material Modifications.  Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of section 1193(a) of the Bankruptcy Code.  This Plan may be modified at any time after confirmation provided the Plan, as modified, meets the requirements of section 1193(b) or 1193(c), as applicable.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1.    Severability.  Should the Bankruptcy Court determine any provision of the Plan is unenforceable either on its face or as applied to any Claim or Interest or transaction, the Reorganized Debtor may modify the Plan so that any such provision shall not be applicable to the holder of any Claim or Interest.  Such a determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Plan or (b) require the resolicitation of any acceptance or rejection of the Plan.

15.2.    Oral Agreements; Modification of Plan; Oral Representations or Inducements. The terms of the Plan and Confirmation Order may only be amended in writing and may not be changed, contradicted, or varied by any oral statement, agreement, warranty, or representation. Neither the Debtor nor their attorneys have made any representation, warranty, promise, or inducement relating to the Plan or its confirmation except as expressly set forth in this Plan or the Confirmation Order or other order of the Bankruptcy Court.

15.3.    Post-Effective Date Service List.  Pleadings filed by any party-in-interest with the Bankruptcy Court after the Effective Date shall be served on the following Persons (collectively the "Service List"): (i) any Person directly affected by the relief sought in the pleading, (ii) the U.S. Trustee, (iii) the Subchapter V Trustee; (iv) parties which have filed a Notice of Appearance in this Bankruptcy Case, and (v) the Reorganized Debtor through his legal counsel.

15.4.    Waiver.  The Reorganized Debtor shall not be deemed to have waived any right, power, or privilege unless the waiver is in writing and signed by the Reorganized Debtor.  There

shall be no waiver by implication, course of conduct or dealing, or through any delay or inaction by the Reorganized Debtor, of any right pursuant to the Plan, including the provisions of this anti-waiver section.  The waiver of any right under the Plan shall not act as a waiver of any other or subsequent right, power, or privilege.

15.5.   Notice.  Any notice or communication required or permitted by the Plan shall be given, made, or sent as follows:

(a)      If to a Creditor, notice may be given as follows:  (i) if the Creditor has filed no proof of Claim, then to the address reflected in the Schedules, or (ii) if the Creditor has filed a proof of Claim, then to the address reflected in the proof of Claim.

(b)      If to the Reorganized Debtor, notice shall be sent to the Reorganized Debtor and counsel of record for the Reorganized Debtor.

(c)      Any Creditor desiring to change its address for the purpose of notice may do so by giving notice to the Reorganized Debtor of its new address in accordance with the terms of this section.

(d)      Any notice given, made or sent as set forth above shall be effective upon being (i) deposited in the United States Mail, postage prepaid, addressed to the addressee at the address as set forth above; (ii) delivered by hand or messenger to the addressee at the address set forth above; (iii) telecopied to the addressee as set forth above, with a hard confirmation copy being immediately sent through the United States Mail; or (iv) delivered for transmission to an expedited or overnight delivery service such as FedEx.

15.6.   Compliance with All Applicable Laws.  If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Reorganized Debtor shall comply with such law, rule, regulation, or order; provided, however, that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings.

15.7.   Duties to Creditors.  No agent, representative, accountant, financial advisor, attorney, shareholder, officer, affiliate, member or employee of the Debtor shall ever owe any duty to any Person (including any Creditor) other than the duties owed to the Debtor's bankruptcy Estate, for any act, omission, or event in connection with, or arising out of, or relating to, any of the following:  (a) the Debtor's Bankruptcy Case, including all matters or actions in connection with or relating to the administration of the Estate, (b) the Plan, including the proposal, negotiation, confirmation and consummation of the Plan, or (c) any act or omission relating to the administration of the Plan after the Effective Date.

15.8.   Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of the Reorganized Debtor, the holders of the Claims or Liens, the holders of Interests, and their respective successors-in-interest and assigns.

15.9.   Governing Law, Interpretation.  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any Plan Documents without regard to conflicts of law.  The Plan shall control any inconsistent term or provision of any other Plan Documents.

15.10.  Filing of Additional Documents.  On or before Substantial Consummation of the Plan, the Reorganized Debtor may file with the Bankruptcy Court such agreements and other

documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.11. <u>Computation of Time</u>.  Bankruptcy Rule 9006 shall apply to the calculation of all time periods pursuant to this Plan.  If the final day for any Distribution, performance, act, or event under the Plan is not a Business Day, then the time for making or performing such Distribution, performance, act, or event shall be extended to the next Business Day.  Any payment or Distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.12. <u>Elections by the Reorganized Debtor</u>.  Any right of election or choice granted to the Reorganized Debtor under this Plan may be exercised, at the Reorganized Debtor's election, separately as to each Claim, Creditor, or Person.

15.13. <u>Release of Liens</u>.  Except as otherwise expressly provided in this Plan or the Confirmation Order, all Liens against any of the Assets transferred to the Reorganized Debtor shall be deemed to be released, terminated and nullified without the necessity of any order by the Bankruptcy Court other than the Confirmation Order.

15.14. <u>Rates</u>.  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.

15.15. <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Reorganized Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local Taxing Authorities and all Distributions under the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim or Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such Distribution under the Plan.

*[The remainder of this page has been left intentionally blank.]*

Dated: February 2, 2026.                    Respectfully submitted,

                                            **KERWIN BURL STEPHENS**


                                            _/s/ Kerwin Burl Stephens_
                                            Kerwin Burl Stephens, individually

APPROVED:

_/s/ J. Robert Forshey_
J. Robert Forshey
State Bar No. 07264200
Lynda L. Lankford
State Bar No. 11935020
**VARTABEDIAN HESTER HAYNES LLP**
301 Commerce St., Suite 2200
Fort Worth, TX 76102
Telephone: (817) 214-4990
Fax: (817) 214-4988
bobby.forshey@vhh.law
lynda.lankford@vhh.law

ATTORNEYS FOR DEBTOR
AND DEBTOR-IN-POSSESSION

## EXHIBITS TO THE PLAN

**Exhibit "A"**                    Liquidation analysis and Schedule of Business Entities

**Exhibit "B"**                    Plan Projections

**Exhibit "C"**                    Description of the Retained Land

## EXHIBIT "A"

## Liquidation Analysis

The Debtor is believed to be solvent based on the satisfaction of the Intervenors' Class 1 Claims and the Disallowance of Plaintiffs' Class 2 Claims.  Consequently, holders of impaired Allowed Claims included in Classes 3 and 4 will be paid in full and with interest, and therefore will receive at least as much as such creditors could receive in a hypothetical Chapter 7 liquidation.  Class 5 (Kelly Hart Claim) has agreed to accept a cash payment from the Distribution Fund of $568,270 without any interest being paid on such Claim.  Consequently, Class 6 creditors (if any) will receive at least as much as such creditors could receive in a hypothetical Chapter 7.  Class 8 (JLS 2022) has agreed to the proposed Plan treatment.

Attached as **Exhibit "C"** is a chart of the Debtor's Remaining Non-Exempt Real Estate reflecting a value of $5,702,000.  Tiburon (POC 10-1) and Trek (POC 11-1) each assert claims against the Debtor of $4,747,839, for a total of $9,495,678.  Including the Class 5 Claim of Kelly Hart in the amount of $568,270, total potential unsecured claims are equal to approximately $10.1 million.  Assuming 10% costs of sale, and approximately $700,000 in Administrative Expenses paid to legal counsel, if Plaintiffs' claims were allowed in full, in a liquidation of the non-exempt assets unsecured creditors would receive a dividend of approximately 50%.  However, all Retained Non-Exempt Assets will be liquidated until all Distribution Fund Claims are paid in full or such assets have all been liquidated.

If Plaintiffs' Claims are disallowed in full, holders of Allowed Unsecured Claims will be paid in full with interest.

Consequently, as to each impaired Class of Claims, the Plan satisfies section 1129(a)(7)(A) because each such impaired Class will receive a Distribution either equal to the full or agreed payment of such Claim or, if Plaintiffs' Claims are Allowed, a Pro Rata Share of Distributions Fund until the Retained Non-Exempt Assets have been fully liquidated.  Each holder of an Allowed Claim will receive or retain on the Effective Date of the Plan if the Debtor were liquidated under Chapter 7 of this title on such date.  In sum, each such impaired Class will either receive an amount agreed upon among the parties or full payment of the Allowed Claim with interest.

## EXHIBIT "B"

## Plan Projections

1.      For calendar year 2025, the Debtor's Disposable Income per month is projected as follows:

| Income Source | Projected Amount ($) |
|---|---|
| Law Firm | 10,000 |
| Brazos Title | 2,130 |
| Oil & Gas revenue | 450 |
| Total: | 12,580[1] |

| Expense | Projected Amount ($) |
|---|---|
| Credit Cards | 2,000 |
| Utilities | 900 |
| Church | 700 |
| Food | 800 |
| Income taxes | 1,500 |
| Total: | 5,900 |

Projected Monthly Disposable Income                     $6,680.00

Annual Projected Disposable Income (12 months):      $80,160.00

Three Years Projected Disposable Income:               $240,480.00

The above plan projections, both as to income and expenses, are good faith estimates based upon the Debtor's current situation.  Both income and expense numbers may vary in the future.  Debtor's projected monthly Disposable Income may be augmented from time to time by additional legal fees earned by the law firm.  However, the Debtor is currently experiencing substantial health problems.  Based on the Debtor's health issues, it is problematic whether the

---

[1]  The Debtor's social security benefits are now $3,176 per month.  These benefits are not included in the table above.  42 U.S.C., section 407 provides that Social Security benefits are not subject to the operation of any bankruptcy or insolvency law.  The definition of "current monthly income" found in section 101(10A) also excludes Social Security benefits.  Consequently, these benefits are not included in the monthly income reflected above.

Debtor can continue his legal practice at the current level over the three (3) years following the Effective Date.  Consequently, the Debtor's ability to realize the Disposable Income at the current level is doubtful over the next three (3) years.

The Debtor's law firm has an engagement, outside the ordinary course, which could yield additional fees over the next three (3) years.  This engagement involves clearing the title to land owned by a client with an agreement to pay a share of the sale proceeds to the firm as the land is sold.  Significant work still remains to be done on the project, and the timing and amounts of the sales of the land remain to be determined.  The fee is expected to be received over the next three (3) years.  The Debtor's present good faith estimate of the amount of this fee is between $200,000 and $400,000.

The value of the property used to satisfy the Claim of JLS 2022 and to pay Allowed Administrative Expense Claims is many times greater than the Debtor's projected disposable income for the next three years, even without potentially reducing projected Disposable Income to take into account the Debtor's health problems.  This and the property transferred to JLS 2022 in satisfaction of its secured claim are many times three years' worth of the Debtor's current Disposable Income at its current level without taking into consideration the potential that the Reorganized Debtor's ability to practice law may be compromised based on the Debtor's ongoing health problems.

**Exhibit "C"**

**Stephens' Remaining Non-Exempt Real Estate**

| Property | Scheduled Value[2] | Current Value[3] |
|---|---|---|
| Hot Wells Property<br><br>110 acres | 253,000 | $275,000<br><br>$2,500 per acre |
| County Line Property<br><br>1208 acres (approximately) | 2,144,000 | $3,322,000<br><br>$2,750 per acre |
| Roach Place<br><br>351.562 acres | 668,000 | $965,000<br><br>$2,750 per acre |
| Jones Estate Property<br><br>Undivided 70 ac | 127,820 | $140,000<br><br>$2,000 per acre |
| Graham Home<br>1528 Rogers Dr. | 271,920 | $450,000 |
| Fort Worth Home<br>264 Casa Blanca | 306,920 | $450,000 |
| Law office – Graham<br>513-515 4th Street | 330,000 | $550,000 |
| **Total:** | **$4,101,660.00** | **$5,702,000** |

---

[2] These values are taken from the Debtor's Schedules [Docket no. 97].

[3] This is Debtor's good faith opinion as to the value of this real estate as of August 2025.